IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD SHAFER, | Civil Action |
| Plaintiff, | No. |
| v. | |
| UNIVERSITY OF PITTSBURGH, | JURY TRIAL DEMANDED |
| Defendant. | |

## CIVIL COMPLAINT

Plaintiff, Richard Shafer, by undersigned counsel, files this Civil Complaint, and in support states the following.

### I. Jurisdiction and Administrative Exhaustion

1. Plaintiff invokes this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331.

2. Plaintiff has exhausted the administrative remedies set forth under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5, as follows:

    a. On November 21, 2023, he timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging religious discrimination and retaliation, and cross-filed with the Pennsylvania Human Relations Commission ("PHRC");

    b. On July 19, 2024, the U.S. Department of Justice issued a Notice of Right to Sue; and

    c. Plaintiff filed this action within 90 days of receipt of that Notice.

### II. Parties

3. Plaintiff, Richard Shafer, is an adult individual who resides in North Braddock, Allegheny County, Pennsylvania.

4. Defendant, University of Pittsburgh of the Commonwealth System of Higher Education, is a Pennsylvania non-profit corporation with a principal place of business located at 4200 Fifth Avenue, Pittsburgh, Allegheny County, Pennsylvania 15260.

5. In 2023, Defendant employed fifteen or more employees in at least twenty weeks of the calendar year.

6. Specifically, in 2023, Defendant employed more than 12,000 employees.

### III. Facts

**A. Background**

7. Mr. Shafer worked for Defendant's Information Technology (IT) department from April 2014 to August 2023. His most recent title was Endpoint Analyst.

8. Mr. Shafer received positive performance evaluations throughout his employment and met all expectations.

9. Throughout his employment, Mr. Shafer was assigned to perform IT services for various departments throughout the University as reorganizations occurred and as different needs arose in various departments.

10. Beginning in or around 2016 and continuing for the remainder of his employment, Mr. Shafer was assigned to Health Sciences departments for 60% to 80% of his assigned effort.

**B. Mr. Shafer's Religious Objection to Animal Research**

11. Defendant's School of Medicine departments use "wet labs" to conduct research on animals, including monkeys, mice, rats, other small animals, goats, and other animals.

12. Mr. Shafer had, and continues to have, religious objections to the types of animal research and testing that Defendant undertook in its wet labs.

13. Mr. Shafer follows Native American religious beliefs. He regularly attends ceremonies in both Lakota and Navajo traditions. He also trained as an herbalist in a school called Well of Indigenous Wisdom. The broad system of Native American religious beliefs is sometimes referred to as the "Red Road."

14. Animal research is incompatible with Mr. Shafer's religious beliefs that animals are sacred and should not be treated in the way that medical research treats them.

### C. Mr. Shafer's Notice to Defendant of his Religious Objections, His Request for Accommodation, and Defendant's Failure to Accommodate Him

15. In or around 2018, Mr. Shafer informed his manager, Frank McAtee, that he would like a different assignment outside the medical research field.

16. Mr. McAtee stated that he would work with Mr. Shafer to find him another assignment.

17. However, Defendant never provided Mr. Shafer a new assignment.

18. In 2021, Mr. Shafer was assigned to assist in opening a new lab within the Defendant's School of Medicine's Ophthalmology department.

19. There, an Ophthalmology researcher showed Mr. Shafer a research monkey who was covered in blood and had permanent implants in his head.

20. The researcher shared with Mr. Shafer that the monkey was 7 or 8 years old. This was the same age as Mr. Shafer's daughter at the time.

21. Mr. Shafer was deeply disturbed by the experience of seeing the condition of the research monkey, which conflicted with his religious belief about the sanctity of animals.

22. Mr. Shafer then told Mr. McAtee that he was uncomfortable with animal research.

23. Mr. McAtee agreed to find Mr. Shafer a new assignment.

24. In the Fall of 2021, Mr. Shafer notified his new manager, Gene Vercammen, of his objection to animal testing and again requested a new work assignment outside of Health Sciences.

25. In January of 2022, Mr. Shafer had a phone call with Gene Vercammen, where he discussed his religion, the practices of his religion, and his religious opposition to animal testing.

26. Mr. Vercammen said he planned to replace Mr. Shafer in the labs with a new hire, and would place him elsewhere once someone was hired.

27. Mr. Vercammen never escalated Mr. Shafer's request for religious accommodation to Human Resources or any other department.

28. Upon information and belief, Defendant never trained Mr. Vercammen on how to handle a request for religious accommodation.

29. Despite Mr. Vercammen's promise to reassign Mr. Shafer when a new employee was hired, this never happened.

30. Instead, Defendant assigned its many new hires over the next year and a half to other departments, while leaving Mr. Shafer in Health Sciences.

**D. Defendant's Transition to Health Sciences IT and Mr. Shafer's Continued Requests for Accommodation**

31. In or around 2021, Mr. Shafer learned that Defendant planned to create a new IT department called Health Sciences IT, which would be a separate department from the rest of Pitt IT.

32. Mr. Vercammen and other managerial employees informed Mr. Shafer that he could be assigned to a new departmental customer once the transition to Health Sciences IT was completed.

33. In or around the Spring of 2023, Mr. Shafer met with Director of Client Services Don Grimm and informed him that he had been waiting a long time for a religious accommodation to be removed from the labs.

34. Mr. Grimm took no action.

### E. Defendant's Decision to Transfer Mr. Shafer Entirely to a Position that Would Violate His Religious Beliefs.

35. On June 16, 2023, Mr. Grimm called Mr. Shafer and informed him that his position would be transferred to the new Health Science IT group.

36. This transfer would mean that the entirety of Mr. Shafer's work assignment would involve a department that engaged in animal research.

### F. Mr. Shafer's Opposition to Defendant's Plan Not to Accommodate His Religious Beliefs

37. Mr. Shafer immediately objected to the transfer to Health Science IT, and reminded Mr. Grimm that he had been asking for a religious accommodation for over two years and patiently waiting with a promise that he would be accommodated.

38. Mr. Grimm responded that if Mr. Shafer could "get over all that," meaning his religious beliefs, there were lots of good opportunities within Health Sciences IT.

39. Mr. Shafer reiterated his religious objection to working in Health Sciences IT.

40. Mr. Grimm responded that Mr. Shafer would have to talk to the Assistant Vice Chancellors for IT.

41. Mr. Shafer then attempted to schedule a meeting with Assistant Vice Chancellor Adam Hobaugh for the following week; however, he was told he could not meet with him until July 18, 2023.

42. In the interim, Mr. Shafer raised his religious objection and concerns about the transfer to Mr. Vercammen, Mr. Vercammen's supervisor, and the Office of the Chief Information Officer (CIO)

43. Both Mr. Vercammen and Executive Assistant to the CIO, Kelly Pittman told Mr. Shafer not to worry, and both asked them to stop making his case any further.

**G. Defendant's Decision to Discharge Mr. Shafer Rather than Accommodate Him.**

44. On July 18, 2023, Mr. Shafer attended a Teams meeting with Assistant Vice Chancellor Hobaugh.

45. At the start of this meeting, Mr. Hobaugh informed Mr. Shafer that he was being laid off rather than transferred.

46. Mr. Shafer reiterated his religious concerns and request for accommodation.

47. On July 20, 2023, Mr. Shafer emailed Ms. Pittman about the meeting with Mr. Hobaugh, and stated, "There is someone remaining on my team who is similarly situated in terms of the criteria they claimed to use to make the decision, but he's absolutely incapable/incompetent, has worked on the team for eight fewer years than me, and he's not losing his job."

48. Ms. Pittman then scheduled a call between Mr. Shafer and CIO Mark Henderson.

49. On that call, CIO Henderson told Mr. Shafer that the University did not offer religious accommodations related to animal research, because the University as a whole supported animal research.

50. Defendant discharged Mr. Shafer effective August 31, 2023.

**H. Defendant's Failure to Rehire Mr. Shafer**

51. Following notification that he would be laid off and would not be accommodated, Mr. Shafer applied for a total of six vacant positions within the University.

52. With respect to one of those positions--Systems Analyst position in Business, Hospitality, and Auxiliary Services—Mr. Shafer completed multiple interviews.

53. Defendant failed to rehire Mr. Shafer for any position.

## COUNT I
### Title VII: Religious Discrimination (Failure to Accommodate)

54. Plaintiff incorporates the allegations of the preceding paragraphs as if fully restated.

55. Defendant failed to make reasonable accommodations to Mr. Shafer's religious belief, observance, or practice, and therefore discriminated against him because of his religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 2000e(j).

56. Defendant's failure to make reasonable accommodations to Mr. Shafer's religion resulted in discrimination in the terms, conditions, and privileges of employment, including requiring him to work in a position that violated his religious belief, observance, or practice; notifying him of a planned transfer to a position that would have further violated his religious observance or practice; and discharging him.

57. As a direct and proximate result of Defendant's failure to accommodate Mr. Shafer, he has suffered damages, including lost wages and benefits, emotional distress, humiliation, inconvenience, loss of reputation, and like injuries.

## COUNT II
### Title VII: Retaliation (Termination)

58. Plaintiff incorporates the allegations of the preceding paragraphs as if fully restated.

59. By requesting reasonable accommodations to his religious belief, observance, or practice, and by opposing Defendant's failure to make reasonable accommodations, Mr. Shafer engaged in protected activity.

60. Defendant discharged Mr. Shafer because he engaged in one or more protected activities, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).

61. As a direct and proximate result of Defendant's retaliation against Mr. Shafer, he has suffered damages, including lost wages and benefits, emotional distress, humiliation, inconvenience, loss of reputation, and like injuries.

## COUNT III
### Title VII: Retaliation (Failure to Rehire)

62. Plaintiff incorporates the allegations of the preceding paragraphs as if fully restated.

63. Defendant failed to hire/rehire Mr. Shafer for one or more positions identified herein because he engaged in one or more protected activities identified herein, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).

64. As a direct and proximate result of Defendant's retaliation against Mr. Shafer, he has suffered damages, including lost wages and benefits, emotional distress, humiliation, inconvenience, loss of reputation, and like injuries.

## COUNT IV
### Title VII: Religious Discrimination (Failure to Rehire)

65. Plaintiff incorporates the allegations of the preceding paragraphs as if fully restated.

66. Defendant failed to hire/rehire Mr. Shafer for one or more positions identified herein because of his religion, including to avoid the actual or perceived need to make a future reasonable accommodation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

WHEREFORE, Plaintiff demands judgment against Defendant, and requests that the Court order the following relief:

    a. Defendant shall compensate Plaintiff for the full value of wages he would have received had it not been for Defendant's illegal treatment of Plaintiff, with

interest and grossed up for negative tax consequences, until the date Plaintiff is offered employment into a position with a compensation package substantially equivalent to the one which Plaintiff occupied;

b. Defendant shall reinstate Plaintiff into the position substantially equivalent to the one he held, together with all benefits incident thereto, including, but not limited to wages, commissions, stock units, fringe benefits, training and seniority; or shall provide Plaintiff with front pay in the event reinstatement is not feasible;

c. Defendant shall compensate Plaintiff for lost benefits, including but not limited to health insurance, retirement/pension benefits, and tuition benefits until Plaintiff's normal retirement age, with interest and grossed up for negative tax consequences;

d. Defendants shall pay Plaintiff compensatory damages for emotional distress, humiliation, inconvenience;

e. Defendant shall be enjoined from discriminating against Plaintiff in any manner that violates Title VII, including an order to reasonably accommodate Plaintiff's religious beliefs should Plaintiff be reinstated;

f. Defendant shall pay Plaintiff and/or his counsel the costs and expenses of this litigation and reasonable attorneys' fees; and

g. Plaintiff shall be granted such further legal and equitable relief as the Court may deem just and proper.

Respectfully submitted,

**ELZER LAW FIRM, LLC**

/s/ Christine T. Elzer
Christine T. Elzer
Pa. I.D. No. 208157
Mark A. Johnson
Pa. I.D. No. 308296

960 Penn Avenue, Suite 1001
Pittsburgh, PA 15222
(412) 230-8436

Attorneys for Plaintiff